<u>NOT FOR PUBLICATION</u>



**FILED**
JAMES J. WALDRON, CLERK

**JAN. 6, 2012**

U.S. BANKRUPTCY COURT
NEWARK, N.J.

BY: s/ Ronnie Plasner, DEPUTY

# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| In Re:<br>**SANDRA M. CARLESS,**<br>                    Debtor. | Case No.:   10-42988  (DHS)<br><br>Adv. No.:   11-01060  (DHS) |
| **VALLEY NATIONAL BANK,**<br>                    Plaintiff,<br>v.<br>**SANDRA M. CARLESS,**<br>                    Defendant. | Judge:    Hon. Donald H. Steckroth |

**OPINION**

**APPEARANCES:**

**DAVID S. BRIMAN, P.C.**
Bonnie M. Weir, Esq.
172 Washington Valley Road, Suite 3
Warren, New Jersey 07059
*Attorneys for Plaintiff*

**McELROY, DEUTSCH, MULVANEY & CARPENTER, LLP**
Eric R. Perkins, Esq.
40 West Ridgewood Avenue
Ridgewood, New Jersey 07450
*Attorneys for Defendant*

**THE HONORABLE DONALD H. STECKROTH, BANKRUPTCY JUDGE**

Before the Court are dueling summary judgment motions and the relevant facts are not in dispute. Valley National Bank ("Plaintiff") brought an adversary proceeding to determine the nondischargeability of a loan that had been personally guaranteed by the Debtor-Defendant Sandra M. Carless ("Debtor") and secured by a mortgage on the Debtor's residence ("Property"). On the same day the Debtor closed and guaranteed the Plaintiff's loan, she allegedly executed an additional mortgage in favor of another lender in order to refinance the Property. In connection with the Plaintiff's loan, the Debtor executed an affidavit of title stating that no legal obligations may be enforced against the Property. The Plaintiff argues that if the Debtor had disclosed the refinancing it would not have made the loan and thus, the debt is nondischargeable pursuant to sections 523(a)(2)(A) and (B) of the Bankruptcy Code. The Debtor counter-argues that she did not know that her residence was collateral for the Plaintiff's loan and thus, she did not act with intent to deceive the Plaintiff. Further, the Debtor asserts that the Plaintiff did not reasonably rely on the affidavit of title because it knew of two liens against the residence that were similarly omitted from the affidavit.

The Court has jurisdiction pursuant to 28 U.S.C. §§ 1334(b), 157(a), and the Standing Order of Reference from the United States District Court for the District of New Jersey dated July 23, 1984. This is a core proceeding under 28 U.S.C. § 157(b)(2)(I). Venue is proper under 28 U.S.C. § 1409(a). The following shall constitute the Court's findings of fact and conclusions of law as required by Federal Rule of Bankruptcy Procedure 7052.

**STATEMENT OF FACTS**

**I.     Plaintiff's Facts**

Decoma Building Corp. ("Decoma") was a company owned by the Debtor's former husband, Everton Carless ("Carless"). (Pl.'s 56.1 Stmt. of Facts, ¶ 1) On October 26, 2006, Decoma obtained a commercial line of credit from the Plaintiff in the amount of $75,000 ("Decoma Loan"). (*Id*. at ¶ 2) The line of credit was secured by, among other assets, a mortgage on the residence owned by the Debtor and her husband ("Property"). (*Id*. at ¶ 3) In connection with the Decoma Loan, the Debtor, who was married to Carless at the time, executed a commercial mortgage, security agreement and assignment of leases as well as an unlimited guaranty and a standard affidavit of title ("Affidavit"). (*Id*. at ¶¶ 3, 5, 7) The Affidavit states, in pertinent part:

> [t]he [m]ortgagor [has] not allowed any interests (legal rights) to be created which affect its ownership or use of the Property. No other persons have legal rights in the Property . . . . The [m]ortgagor does not have any pending lawsuits or judgments against it or other legal obligations which may be enforced against the Property.

3

(*Id*. at ¶ 7, Ex. D)

The Debtor states she did not discuss the terms of the Decoma Loan with the Plaintiff nor did she read the Affidavit or other documentation. (*Id*. at ¶¶16, 18); (*see also* Carless Dep. 44:11-19, 49:16-25, 50:1-23) Apparently, on the same day the Debtor signed the Affidavit and guaranteed the Decoma Loan, she refinanced the Property executing a $600,000 note and mortgage in favor of Accredited Home Lenders, Inc. ("AHL"). (*Id*. at ¶ 13-14) The Debtor allegedly failed to inform the Plaintiff that she had or was intending to refinance the Property. (*Id*. at ¶ 16) Decoma eventually defaulted, causing the Plaintiff to bring suit in New Jersey Superior Court against Decoma, Carless, and the Debtor. (*Id*. at ¶ 21) On April 17, 2009, judgment in the amount of $72,633.24 was entered against the Debtor and her co-defendants in the state court action. (*Id*.) In addition, the Plaintiff brought a foreclosure proceeding against the Property. (*Id*. at ¶ 23) During foreclosure, it was discovered that the Plaintiff's mortgage was subordinate to AHL's mortgage as AHL filed a notice of real estate settlement three days before the Plaintiff recorded its mortgage. (*Id*. at ¶ 24)

Finally, the Plaintiff notes that the Debtor is an educated and experienced business person. (*Id*. at ¶¶ 25-30) Notably, she has experience in commercial finance. As the president and owner of InfoCon, Inc., the Debtor sought, and obtained approval for, a large commercial loan from the Plaintiff, although the loan did not close. (*Id*. at ¶¶ 25-26)

## II. Debtor's Additional and Disputed Facts

The Debtor did not submit a loan or mortgage application in connection with the Decoma Loan. (Def.'s 56.1 Stmt. of Facts, ¶ 8) She was unaware that Carless was attempting to obtain a line of credit secured by a mortgage on the Property. (*Id*. at ¶ 12) She was not provided with any documents nor was she contacted by the Plaintiff in connection with the Decoma Loan prior to the execution date. (*Id*.) The loan documents, including the Affidavit, were prepared by the Plaintiff, not the Debtor. (*Id*. at ¶ 15) When the Plaintiff prepared the Affidavit, it knew that there were two pre-existing liens on the Property: a first mortgage in the amount of $439,000 and a second mortgage, held by the Plaintiff, in the amount of $42,000. (*Id*. at ¶¶ 3, 6, 16) The Affidavit, however, does not reflect the pre-existing liens. The Plaintiff did not ask the Debtor if she was seeking additional credit or advise her that she could not refinance the Property, nor did it order a title search or "rundown" in connection with the Property. (*Id*. at ¶¶ 9, 20)

In April 2007, the Plaintiff conducted a property search and discovered the existence of the AHL mortgage. (*Id*. at ¶ 25) The search, however, incorrectly listed the Plaintiff's mortgage as having first priority against the Property. (*Id*.) Allegedly, the Plaintiff made no attempt to contact either Carless or the Debtor regarding the AHL mortgage. (*Id*. at ¶ 28) Presumably relying on its priority position and Decoma's past performance, the Plaintiff renewed the line of credit without obtaining the express permission of Carless, Decoma, or the Debtor. (*Id*. at ¶ 30)

## DISCUSSION

I.    **Summary Judgment Standard**

A court may grant summary judgment under Federal Rule of Civil Procedure 56(c), made applicable to adversary proceedings pursuant to Federal Rule of Bankruptcy Procedure 7056, "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Id.*  At the summary judgment stage, the role of the court "is not to weigh evidence, but to determine whether there is a genuine issue for trial."  *Knauss v. Dwek*, 289 F. Supp. 2d 546, 549 (D.N.J. 2003) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).  The court must construe facts and inferences in a light most favorable to the non-moving party.  *See Am. Marine Rail NJ, LLC v. City of Bayonne*, 289 F. Supp. 2d 569, 578 (D.N.J. 2003) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986)).  "Only evidence admissible at trial may be used to test a summary judgment motion.  Thus, evidence whose foundation is deficient must be excluded from consideration."  *Williams v. Borough of West Chester, Pa.*, 891 F.2d 458, 471 (3d Cir. 1989) (citations omitted).

The moving party must make an initial showing that there is no genuine issue of material fact.  *See Knauss*, 289 F. Supp. 2d at 549 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).  The burden then shifts to the non-moving party to "'make a showing sufficient to establish the existence of [every] element essential to the party's case, and on which that party will bear the burden of proof at trial.'"  *Cardenas v. Massey*, 269 F.3d 251, 254-55 (3d Cir. 2001) (questioned on other grounds) (quoting *Celotex Corp.*, 477 U.S. at 322).  The "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson*, 477 U.S. at 247-48 (emphasis in original).  An issue of fact is "genuine" if a reasonable juror could return a verdict for the non-moving party.  *See id.* at 248.  Furthermore, a material fact is determined by the substantive law at issue.  *See Crane v. Yurick*, 287 F. Supp. 2d 553, 556 (D.N.J. 2003) (citing *Anderson*, 477 U.S. at 248).  A fact is "material" if it might affect the outcome of the suit under governing law.  *Id.*  Disputes over irrelevant or unnecessary facts are insufficient to defeat a motion for summary judgment. *Anderson*, 477 U.S. at 248 (citation omitted).

However, even if material facts remain disputed, summary judgment may be proper if, after all inferences are drawn in the non-moving party's favor, the moving party is entitled to judgment as a matter of law.  *Id.* at 248-50.  Such a judgment is appropriate "as a matter of law" when the non-moving party has failed to make an adequate showing on an essential element of his or her case, as to which he or she has the burden of proof.  *See Celotex Corp.*, 477 U.S. at 322-23.  When one party moves the court for summary judgment, Federal Rules of Civil Procedure 54(c) and 56, taken together, permit the court to enter summary judgment on behalf of the non-movant, even if the non-movant has not filed a cross-motion for summary judgment. *See Peiffer v. Lebanon Sch. Dist.*, 673 F. Supp. 147, 151-52 (M.D. Pa. 1987) (citation omitted).

5

On the other hand, a court must deny a motion for summary judgment when a genuine issue of material fact remains to be tried, or where the moving party is not entitled to a judgment as a matter of law.

## II.     Statement Respecting a Debtor's Financial Condition

The Plaintiff bank brings the instant adversary complaint seeking a determination of nondischargeability pursuant to sections 523(a)(2)(A) and (B) of the Bankruptcy Code. These provisions, however, are "mutually exclusive and require different elements of proof." *Goodman v. Kleiman (In re Kleiman)*, 2007 Bankr. Lexis 1763, at *10 (Bankr. D.N.J. May 18, 2007), *aff'd*, 2008 U.S. Dist. Lexis 6695 (D.N.J. Jan. 30, 2008). Specifically, section 523(a)(2)(A) governs the nondischargeability of a debt obtained by "false pretenses, a false representation, or actual fraud, *other than a statement respecting the debtor's or an insider's financial condition*." 11 U.S.C. § 523(a)(2)(A) (emphasis added). The nondischargeability of a debt obtained by a statement respecting the debtor's financial condition is determined under section 523(a)(2)(B), which requires that the statement be made in writing. *Id.* (citing *Field v. Mans*, 516 U.S. 59 (1995)). As the Court previously observed, the Third Circuit remains divided as to the scope of the phrase: "a statement respecting a debtor's or insider's financial condition." *Dill v. Meyers (In re Meyers)*, 2011 Bankr. Lexis 1047, at *14 (Bankr. D.N.J. Mar. 17, 2011). A broad construction captures "any communication that has a bearing on the debtor's financial position," *In re Joelson*, 427 F.3d 700, 705 (10th Cir. 2005); *see Nicholson v. Nicolai (In re Nicolai)*, 2007 Bankr. Lexis 339, at *4 (Bankr. D.N.J. Jan. 31, 2007), while a narrow construction confines the phrase to "any communication that presents an overall picture of the debtor's financial position." *Id.* at *3; *see D. Hagin Mfg. Co. v. Pollina (In re Pollina)*, 31 B.R. 975, 978 (D.N.J. 1983) (disapproved by *Engler v. Van Steinburg*, 744 F.2d 1060 (4th Cir. 1984) (stating the phrase should not be limited to the use of formal financial statements)). Recent decisions consider "the type of information [i.e., information a potential lender would usually consider] and its [intended] purpose [to] determine whether a statement is [one] respecting a debtor's financial condition." *Meyers*, 2011 Bankr. Lexis 1047, at *14 (quoting *Kleiman*, 2007 Bankr. Lexis 1763, at *11-12).

Here, the question is whether the Debtor's alleged failure to disclose information relating to the Property amounts to "a statement respecting the debtor's [] financial condition." 11 U.S.C. § 523(a)(2)(B). Clearly, the omitted information "concern[s] . . . liability impacting on the debtor's financial picture," as the AHL loan was both secured by the Property and personally guaranteed by the Debtor. *Beneficial Nat'l Bank v. Priestley (In re Priestley)*, 201 B.R. 875, 882 (Bankr. D. Del. 1996) (citing *Engler*, 744 F.2d 1060 (statements of financial condition include statements regarding encumbrances on an asset)). Thus, the failure to disclose the AHL loan falls within the broad view of the term "financial condition." Consequently, section 523(a)(2)(A) does not apply here and nondischargeability must be determined under section 523(a)(2)(B).

### III.    Nondischargeability under § 523(a)(2)(B)

The Bankruptcy Code attempts to "relieve debtors from the weight of oppressive indebtedness and provide them with a fresh start." *Ins. Co. of N. Am. v. Cohn (In re Cohn)*, 54 F.3d 1108, 1113 (3d Cir. 1995). Accordingly, courts construe exceptions to discharge strictly against creditors and liberally in favor of debtors. *Id*. Nevertheless, "[w]here a debtor has committed a fraud under the code, he is not entitled to the benefit of a policy of liberal construction against creditors." *Cohen v. De La Cruz (In re Cohen)*, 106 F.3d 52, 59 (3d Cir. 1997). Pursuant to section 523(a)(2)(B), an individual debtor is not discharged from any debt,

> (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by –
>
> (B) use of a statement in writing –
>
> (i) that is materially false;
>
> (ii) respecting the debtor's or an insider's financial condition;
>
> (iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and
>
> (iv) that the debtor caused to be made or published with intent to deceive[.]

11 U.S.C. § 523(a)(2)(B).

Under section 523(a)(2)(B), the Plaintiff has the burden of proving, by a preponderance of the evidence, that the writing: (1) is materially false; (2) respects the debtor's financial condition; (3) was reasonably relied on; and (4) was made with intent to deceive. *Cohn*, 54 F.3d at 1114. The section does not require a showing of proximate causation. *Id*. at 1114-18; *see Priestley*, 201 B.R. at 885. As discussed, the information was omitted from a writing, the affidavit of title, and concerns the Debtor's financial condition. The remaining elements of section 523(a)(2)(B) will be addressed in turn.

Under section 523(a)(2)(B), materiality is "a question of law, judged by an objective standard." *Id*. at 883. On the question of materiality, courts consider whether (1) "the lender would have made the loan had he known the debtor's true financial condition;" (2) the representation or omission influenced the decision to lend; or (3) the statement was "so substantial that a reasonable person would have relied upon it . . . ." *Id*. (citing *Cohn*, 54 F.3d at 1114. Clearly, the Debtor's omission of a $600,000 refinancing was material. The Plaintiff may not have made the Decoma Loan had it known that it would have to race AHL for priority. (Brauer Dep. 77:5-17) Though the failure to disclose the AHL transaction in the Affidavit constitutes a material omission, the Plaintiff must have reasonably relied on the document.

7

The Affidavit was prepared by the Plaintiff and failed to reflect the Plaintiff's knowledge that two liens encumbered the Property at the time of the Decoma Loan's execution. Thus, the Debtor argues, the Plaintiff could not have reasonably relied on the Affidavit because it knew it was materially false. Like the materiality element, reasonable reliance is determined "by an objective standard, i.e., that degree of care which would be exercised by a reasonably cautious person in the same business transaction under similar circumstances." *Cohn*, 54 F.3d at 1117; *see Klieman*, 2007 Bankr. Lexis 1763, at \*17. Three factors control the analysis:

> (1) the lender's standard practices in evaluating credit-worthiness (absent other factors, there is reasonable reliance where the creditor follows its normal business practices); (2) the standards or customs of the creditor's industry in evaluating credit-worthiness (what is considered a commercially reasonable investigation of the information supplied by debtor); and (3) the surrounding circumstances existing at the time of the debtor's application for credit (whether there existed a "red flag" that would have alerted an ordinarily prudent lender to the possibility that the information is inaccurate, whether there existed previous business dealings that gave rise to a relationship of trust, or whether even minimal investigation would have revealed the inaccuracy of the debtor's representations).

*Cohn*, 54 F.3d at 1117.

Simply put, "[e]vidence that demonstrates that a loan would not have been granted if the creditor had received accurate financial information is sufficient to show reliance." *Klieman*, 2007 Bankr. Lexis 1763, at \*18. Here, the Plaintiff claims that it followed standard procedures in connection with the Decoma Loan. Further, there is no evidence of any "red flags" that might have put the Plaintiff on notice of the AHL mortgage. As in *Priestley*, the Plaintiff could not have learned of the omitted information without full disclosure by the Debtor. *Priestley*, 201 B.R. at 884. While the Plaintiff did not order a title search or a "rundown," neither would have revealed the AHL mortgage. In fact, the Plaintiff's decision not to order a title search is consistent with its standard policy as it does not order a title search for loans in the amount of the Decoma Loan. (Brauer Dep. 41:12-21)

While true that the Plaintiff knew the Affidavit was false with respect to the pre-existing liens (which it had knowledge of), it did not, and could not, have known of the AHL mortgage unless informed by the Debtor. Nevertheless, the Debtor argues that the Plaintiff did not rely on the Affidavit because it had knowledge of its falsity. The Debtor finds support for her position in *Signal Consumer Disc. Co. v. Malachosky (In re Malachosky)*, 98 B.R. 222 (Bankr. W.D. Pa. 1989). The court in *Malachosky* found that the lender did not reasonably rely on a loan application omitting certain debts where the lender learned of the omissions through a routine credit check. Though the Court agrees that the Plaintiff could not reasonably rely on the Affidavit with respect to the pre-existing liens, *Malachosky* does not apply here. Unlike

8

*Malachosky*, the Plaintiff here seeks a determination of nondischargeability based on omitted information unknown to the Plaintiff at the time of the transaction. As mentioned, without full disclosure on the Debtor's part, the Plaintiff had no way of knowing that it was competing for priority with AHL's $600,000 mortgage. The Plaintiff complied with its standard procedures, which have not been shown to deviate from industry practice, and extended financing based on facts known to it at the time. The Plaintiff asserts that the loan would not have been made had it known of the AHL transaction. That position is understandable and thus, the Plaintiff's reliance on the Affidavit was reasonable.

Finally, the Debtor argues that she did not act with the requisite intent to deceive. The Debtor asserts that she did not read the Decoma Loan documents but, rather she relied on her then husband's representation that she was merely co-signing a loan for Decoma. Accordingly, she did not intentionally deceive the Plaintiff as she did not know that the Decoma Loan was secured by a mortgage on the Property. Intent to deceive, however, can be "establish[ed] by . . . proving reckless indifference to, or reckless disregard of, the accuracy of the information in the financial statement of the debtor when the totality of the circumstances supports such an inference." *Cohn*, 54 F.3d at 1119.

At the very least, the Debtor acted recklessly when she executed the Decoma Loan documents without disclosing the AHL transaction which had or was about to take place. The Debtor seems to argue that because she never reviewed the loan documents, and thus contends she did not know that the Decoma Loan was secured by a mortgage on the Property, she could not have intentionally concealed the AHL transaction. The Debtor, however, is a seasoned business person with experience in commercial financing transactions. *Signal Consumer Disc. Co. v. Hott (In re Hott)*, 99 B.R. 664, 668 (Bankr. W.D. Pa. 1989) (the court considered the "[d]efendant's education and qualifications in relation to his claims of innocence"); *see also Priestley*, 201 B.R. at 884-5 (noting the debtor is an experienced real estate attorney). A Debtor "may not assume the position of an ostrich with [her] head in the sand and ignore facts which were readily available[.]" *Hott*, 99 B.R. at 668. If nothing else, the Debtor knew that she was personally guaranteeing significant loans on the same day, information the Plaintiff reasonably would have considered before lending to Decoma. Further, while the Debtor was not given opportunity to review the documents prior to the execution date, the Court notes that the Affidavit is brief and straightforward. A cursory review of the mortgage and Affidavit would have revealed that the Decoma Loan was secured by the Property. Lastly, the Debtor asserts that she did not make or sign a loan application in connection with the Decoma Loan, and therefore, the Plaintiff cannot show that she "ma[de] or publish[ed]" the writing as required by section 523(a)(2)(B)(iv). Under the subsection, however, "[a] writing is published . . . if it is either written by the debtor, signed by the debtor or adopted and used by the debtor." *Frankford Bank v. Chryst (In re Chryst)*, 177 B.R. 486, 500 (Bankr. E.D. Pa. 1994) (internal quotation marks omitted). The undisputed facts clearly establish that the Affidavit was published within the meaning of the subsection. Regarding the Decoma Loan, the Debtor chose, at best, ignorance and cannot now discharge a debt born of her own recklessness. The Debtor published the Affidavit with the requisite intent. Thus, the debt is nondischargeable.

9

**CONCLUSION**

As a result of the above, the Plaintiff has shown the elements required for a finding of nondischargeability pursuant to section 523(a)(2)(B). The Plaintiff's motion for summary judgment is granted and the Debtor's cross-motion is denied.

An Order in Conformance with this Opinion has been entered by the Court and is attached hereto.

s/ *Donald H. Steckroth*

DONALD H. STECKROTH
UNITED STATES BANKRUPTCY JUDGE

Dated: January 6, 2012